## Staunton

MRS. L. SNYDER, B. P. SNYDER AND S. SNYDER, INDIVIDUALLY AND AS PARTNERS TRADING AS L. SNYDER'S DEPARTMENT STORE v. SHIRLEY GINN.

September 2, 1960.

Record No. 5114.

Present, All the Justices.

The opinion states the case.

*Lester S. Parsons* (*Parsons, Stant, Parsons & Mirman*, on brief), for the plaintiffs in error.

*Wayne Lustig* (*Gordon E. Campbell; Charles R. Cloud*, on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Shirley Ginn, hereinafter referred to as plaintiff, filed a motion for judgment against Mrs. L. Snyder, B. P. Snyder, and S. Snyder,

individually and as partners trading as L. Snyder's Department Store, to recover damages arising out of personal injury claimed by her to have been received due to the negligence of the defendants in permitting a dangerous and hazardous condition to exist on their premises while she was on the said premises as an invitee.

Defendants answered, denied negligence on their part, and alleged that the injury suffered by the plaintiff was caused by her own negligence. At the close of plaintiff's testimony, and at the conclusion of all the testimony, the court overruled the motion of defendants to strike the plaintiff's evidence. There were a verdict and judgment for the plaintiff, and we granted this writ of error.

There are numerous assignments of error relating to the rulings of the court in refusing to strike the evidence, in admitting certain evidence, and in the granting and refusal of instructions; but in our view it is necessary to consider only the question whether there was any proof that the defendants were guilty of negligence.

Shirley Ginn is a young married woman, twenty-five years of age, and an employee of the Health Department of the City of Norfolk, Virginia. Defendants are the owners and operators of a department store, located at the corner of City Hall avenue and Church street in Norfolk.

On April 25, 1958, Mrs. Ginn entered defendants' store from its City Hall avenue entrance at 11:45 o'clock a. m. After making a purchase, she started to leave the store by way of the exit to Church street. She had never used the Church street exit before, and her assigned reason for using it then was because it was a bright, clear day, and she desired to walk around the building on her way back to her office.

The Church street exit is through a plate glass enclosed vestibule. A photograph of the vestibule shows that it is equipped with dual plate glass doors, one set within the store and the second set on the side next to Church street. Each of the dual doors is three feet in width, framed in metal, with a metal cross-bar handle extending across the middle of its full width. Above each doorway is a framed plate glass panel, and on the sides of each doorway are plate glass framed panels extending from the floor to the ceiling. Each sidewall has a single plate glass panel extending also to the ceiling. Each side panel and the doors are each fully framed, including baseboards at their lower ends. Below the inside doors is a horizontal threshold strip, and there are some small fastenings, locks and catches visible on

the doors. All of the glass is transparent, and the framing is clearly defined and readily distinguishable from the glass.

Mrs. Ginn said that on her way out of the store, she stopped to look at some jewelry at a counter located within the store, immediately in front of the Church street doorway. She said she stepped away from that counter to go to the Church street exit; and that the only thing she saw were the doors on the outside of the vestibule, that is, on the Church street side of the store. She did not observe the handles on the inside doors, nor their framework. Thinking her way was clear, she walked into the glass in the panel on the left of the inside door and severely injured her head. She said that her failure to see the inside doors and their fixtures was because she approached the exit at an angle, and saw only the outside doors. On cross-examination, she admitted that if she had been looking "straight ahead" she could have seen the inside doors as distinguished from the left side glass panel. Furthermore, she identified the photograph in evidence, agreed that it correctly showed the conditions which existed in the store, and then repeated her admission that she could have seen the inside doors if she had been looking toward them.

On behalf of the defendants, Bernard B. Spigel testified that after completing a course in architecture, he had been engaged in that profession since 1920; that he had specialized in commercial buildings from Brooklyn, New York, to Norfolk; that he designed the Church street entrance and exit at the defendants' store; and that it was a standard and approved design for such establishments, both as to equipment and installation, and generally in use in stores throughout the country. He pointed out that there was a complete metal frame around each one of the doors; that the glass panels on both sides of the doorway were also completely framed; and that the glass in the doors was held in place by what he termed "the stiles of the door, and the cross-bars," and that this easily distinguished the doors from the glass panels.

Cross-examination of Spigel showed that one looking through the plate glass panels could see the outside doors; but that this in no way prevented anyone from seeing the inside doors. He also said that the object of using transparent glass was to enable the public to see the merchandise in the store.

The contractor, who installed the door and who had been in the contracting business for many years, stated that it was a standard and approved door for stores used by merchants generally; that it

was installed in accordance with the architect's plans and specifications; that there were several buildings in Norfolk which had the same type of entrance; and that he had installed similar doors in other places.

An examination of the picture of the doorway plainly discloses that the situation and condition of the inside doors were completely open and obvious to any person who was looking in their direction.

In *Knight* v. *Moore*, 179 Va. 139, 18 S. E. 2d 266, we reviewed and discussed the principles governing the liability of the owner of premises to invitees. There we said that the owner of premises is not an insurer of the invitee's safety thereon. He must use ordinary care to render the premises reasonably safe for the invitee's visit, and notice of an unsafe condition is not required where that condition "is open and obvious, and patent to a reasonable person exercising ordinary care for his own safety." (179 Va., *supra*, 145, 146)

In this connection, see also *Williamsburg Shop* v. *Weeks*, 201 Va. 244, 110 S. E. 2d 189, where we held that a storeowner is required to exercise reasonable care to see that his premises are kept in a reasonably safe condition for use of an invitee; but that an invitee on his premises could not close her eyes and walk on the premises without regard to open and obvious conditions, apparent to anyone who looks, and expect to recover for an injury thereby sustained.

Plaintiff relies upon *Crocker* v. *WTAR Radio Corporation*, 194 Va. 572, 74 S. E. 2d 51; but the facts in that case are not similar to those here. In that case there was a highly polished floor with two levels, one slightly lower than the other, and of exactly the same coloring. There were bright kleig lights shining from above, which gave the obvious impression that it was a continuous floor without any stepdown; and, therefore, presented a condition of danger neither open nor obvious.

There is no evidence in the record showing that defendants were guilty of the negligence charged. On the other hand, the evidence shows, without conflict, that the injury sustained by Mrs. Ginn was due to her own thoughtlessness or lack of care. The conditions around the doorways were open and obvious, and Mrs. Ginn would not have suffered the injury sustained by her had she exercised ordinary care in looking ahead as she started to walk from the store. Consequently, she was the author of her own misfortune.

For the foregoing reasons, the judgment complained of is reversed;

the verdict of the jury set aside; and final judgment here entered for the defendants.

*Reversed and final judgment.*